IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MARCO GOMEZ, )
)
      Plaintiff, )
)
)   CIV-13-351-D
v. )
)
G. GARRETT, et al., )
)
      Defendants.[1] )

## REPORT AND RECOMMENDATION

On March 4, 2013, Plaintiff, a California state prisoner appearing *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

Plaintiff originally filed the Complaint in the United States District Court for the Eastern District of California, and the action was transferred to this Court by order of United States Magistrate Judge Claire on April 9, 2013. On August 19, 2013, Plaintiff filed a 42-page Second Amended Complaint. For the following reasons, it is recommended that the

---

[1]Several former Defendants have not been named in Plaintiff's Second Amended Complaint, and those Defendants are voluntarily terminated from the action, including Defendants Institutional Gang Investigations Unit, R. Flowerree, M. Lea, M. Williams, K. Kesterson, A. Fiegener, T. Shook, D. McBane, S. Gold, "John/Jane Doe 1-100," and "John/Jane Doe 101-10." Additional Defendants named in Plaintiff's Second Amended Complaint and not named in the original Complaint are: J. Bates, J. Crandall, A.R. Perez, Matthew Cate, "John/Jane Doe # 1," "John Doe # 2," and "John Doe # 3."

action be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

I. <u>Statutory Screening of Prisoner Complaints</u>

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The same screening of a civil complaint filed *in forma pauperis* is required by 28 U.S.C. § 1915(e)(2). After conducting an initial review, the Court must dismiss a complaint or any portion of it presenting claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

In conducting this review, the Court must accept the plaintiff's allegations as true and construe them, and any reasonable inferences to be drawn from the allegations, in the light most favorable to the plaintiff. <u>Kay v. Bemis</u>, 500 F.3d 1214, 1217 (10th Cir. 2007). Although a pro se litigant's pleadings are liberally construed, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1247-1248 (10th Cir. 2008)(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007)). The allegations in a complaint must present "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Further, a claim is frivolous "where it lacks an arguable basis either in law or in fact" or is "based on an indisputably meritless legal theory." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325, 327 (1989).

II. Plaintiff's Claim

In his Second Amended Complaint, Plaintiff alleges as his sole claim that his due process rights were violated when officials of the California Department of Corrections and Rehabilitation ("CDCR") determined that he was an associate of a gang under California state regulations. Plaintiff alleges that he was not provided a "mandatory prevalidation interview" and that CDCR officials Rosenkrans, Lawson, and Williams, who were the "final decision makers in Plaintiff's validation package," "failed to investigate the confidential information used in the validation, used fabricated documents, and knowingly went along with IGI/OCS refusing to give Plaintiff his mandatory prevalidation interview." Second Amended Complaint, at 27-28.

At the time this determination was made in December 2010, Plaintiff was confined at North Fork Correctional Facility ("NFCF"). NFCF is a private prison in Oklahoma that houses California inmates pursuant to a contract between NFCF and CDCR. However, at the time he filed his Complaint, Plaintiff was housed at the California State Prison located in Lancaster, California.[2]

III. Procedure Followed to Validate Plaintiff's Gang Status

California law requires an inmate to be placed in administrative segregation whenever he or she "presents an immediate threat to the safety of the inmate or others." Cal.Code Regs. tit. 15, § 3335(a). In California, an inmate who affiliates with a prison gang presents such

---

[2]Documentary evidence attached to Plaintiff's Complaint reflects that he was transferred from NFCF to a California state prison on June 15, 2011. Complaint, at 78.

a threat. Madrid v. Gomez, 889 F.Supp. 1146, 1241 (N.D.Cal.1995). Two degrees of gang affiliation are recognized in California: (1) "member," and (2) "associate." Cal.Code Regs. tit. 15, § 3378(c)(3)-(4). "[O]nce [prison officials] determine[ ] that an inmate is a member or associate of a prison gang, the inmate is routinely transferred to administrative segregation" in the correctional facility. Madrid, 889 F.Supp. at 1241.

CDCR officials follow a multi-step administrative process, known as "validation," to classify an inmate as a gang "member" or "associate." See id. at 1241–1243. Cal.Code Regs. tit. 15, § 3378(c)(4) requires "three (3) independent source items of documentation indicative of association with validated gang members or associates." Each source item must fit within a category of evidence that CDCR officials are authorized by the regulations to use in the validation process. Cal.Code Regs. tit. 15, § 3378(c)(8)(A)-(M).

In this case, CDCR officials followed the procedures required by California's regulations. On December 10, 2010, Plaintiff was advised via a written form, a "CDCR 128-B" form, signed by CDCR official Logan that CDCR had undertaken an investigation of his suspected membership and/or association with a prison and/or disruptive group recognized by CDCR and that the investigation revealed sufficient evidence to identify Plaintiff as a member of the Northern Structure prison gang. Plaintiff's Exhibits (Doc. # 15), at 2. The evidence on which this determination was based is described on the form, and supporting documents specifying this evidence were provided to Plaintiff at that time. Id. at 4, 6, 8, 10. Plaintiff was transferred to the administrative segregation unit at NFCF and provided a statement of the reasons for the placement. Second Amended Complaint (Doc. # 23), at Ex.

4

H.

On December 11, 2010, two CDCR officials, Mr. Logan, an Institutional Gang Investigator ("IGI") of the CDCR's Office of Correctional Safety, and Mr. Murphy, a Lieutenant of CDCR's Office of Correctional Safety, completed a CDCR form labeled "CDCR 128-B." On this form, Mr. Logan and Mr. Murphy stated that CDRC's Institutional Gang Investigations Unit had completed an investigation of Plaintiff's gang status. Plaintiff's Exhibits, at 18. Based on four source documents described on the form, Mr. Logan and Mr. Murphy stated they had determined there was sufficient evidence to validate Plaintiff as a member of the Northern Structure prison gang and that this information had previously been disclosed to Plaintiff on December 10, 2010. Further, the officials stated on the form that Plaintiff had been interviewed on December 11, 2010, regarding the documents used to validate his gang status and Plaintiff had provided a written response addressing the documents used in the review. The officials stated that the "aforementioned information will be forwarded to the Office of Correctional Safety for review and acceptance of [Plaintiff's] prison gang validation." Id.

On December 16, 2010, an Institutional Classification Committee (ICC) hearing was conducted telephonically with Plaintiff, and Plaintiff was advised by CDCR officials Romero, De Silva, and Kesterson that the committee determined he would remain in the administrative segregation unit "pending OCS documentation." Complaint (Doc. # 1), at 59.

Two CDCR officials, Mr. Rosenkrans and Mr. Lawson, issued a CDCR report labeled "CDC 128-B-2" in which the officials stated that on December 12, 2010, they had received

a "gang validation package" regarding Plaintiff from IGI Murphy, that four "items" described on the form met California's validation requirements and that "[p]ursuant to the validation requirements established in 15 CCR Section 3378," Plaintiff was "validated . . . as an associate of the Northern Structure prison gang." Id. at 12. The report reflects that Plaintiff received a copy of the form on March 11, 2011, and that Plaintiff's status would be reviewed in December 2016. Id.

CDCR officials Rosenkrans and G. Williams subsequently issued an Amended Report stating that three "items" described on the form "meet the validation requirements," that a fourth item described on the form did not meet the validation requirements, and that based on the evidence presented in the three "items" described therein Plaintiff was validated as an associate of the Northern Structure prison gang. Id. at 20.

On March 17, 2011, an ICC hearing was conducted telephonically with Plaintiff for an "annual review" of his administrative segregation unit housing placement. Plaintiff was advised that as a result of the gang validation determination "ICC will refer this case to the CSR for indeterminate [segregated housing unit or] SHU consideration and an adverse transfer to" either Pelican Bay State Prison or another California state prison, and that his classification at NFCF in the administrative segregation unit would remain the same "pending transfer for SHU housing." Id. at 14.

Plaintiff appealed the gang validation determination to CDCR officials, alleging multiple due process violations and a lack of evidence to support the validation determination. Plaintiff's Second Amended Complaint, Ex. G. CDCR official M. Lea issued

6

a "Second Level Appeal Response" dated April 15, 2011, addressing the issues raised in Plaintiff's administrative appeal and affirming the gang validation decision. Id. at 7-12. CDCR officials K. Pool and D. Foston in CDCR's Office of Appeals issued a Third Level Appeal Decision dated August 30, 2011, denying the appeal, finding that Plaintiff "was afforded all due process requirements," and advising Plaintiff that his administrative remedies available within CDCR were exhausted. Id. at 13-15.

IV. Personal Jurisdiction

Of the sixteen named and unnamed Defendants in the Second Amended Complaint, Plaintiff has alleged that only one of the Defendants, NFCF Warden Figueroa, resides in the State of Oklahoma. He alleges that "[a]ll Defendants came from California to conduct this operation" at NFCF, except for Defendant NFCF Warden Figueroa, and that the fifteen Defendants except for Defendant Figueroa ("California Defendants") are employed by CDCR. Plaintiff alleges he is suing each of the Defendants in both their individual and official capacities.

Plaintiff bears the burden of establishing personal jurisdiction over a defendant. OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1091 (10th Cir. 1998). "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir.2006) (internal quotation marks omitted). Title 42 U.S.C. § 1983 "does not, by itself, confer nationwide service of process

or jurisdiction upon federal district courts to adjudicate claims." Id. Looking to Fed.R.Civ.P. 4(k)(1)(A), this procedural rule contemplates the exercise of in personam jurisdiction consistent with Oklahoma's long-arm statute.

Oklahoma's long-arm statute authorizes the exercise of any jurisdiction that is consistent with the Due Process Clause. Thus, the question is whether exercising personal jurisdiction over the California Defendants satisfies due process. See id. at 1217.

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-414 (1984). Personal jurisdiction that comports with due process exists if a defendant has minimum contacts with the State. Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000)(citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)). The "minimum contacts" standard is satisfied if (1) "the defendant has purposefully directed his activities at residents of the [State], and the litigation results from alleged injuries that arise out of or relates to those activities" or (2) the defendant has "sufficient contacts" with the State.[3] Helicopteros, 466 U.S. at 414. See Trujillo, 465 F.3d at 1218.

Plaintiff asserts in his Second Amended Complaint that Defendants Garrett, Logan, Murphy, Taber, Luna, "John Doe # 2," and "John Doe # 3" were California residents and

---

[3]Although the minimum contacts standard may also be justified by a defendant's "continuous and systematic general business contacts in the forum state," Trujillo, 465 F.3d at 1218 n. 7, Plaintiff has not alleged, and there are no facts from which a reasonable inference could be drawn to support such an allegation, that any of the California Defendants engaged in systematic and continuous business activity in the State of Oklahoma.

8

CDCR officials who were "assigned" to NFCF. Second Amended Complaint, at 9, 11, 12, 13. However, nothing in Plaintiff's pleadings or evidentiary documents suggests that the California Defendants have such extensive contacts with Oklahoma that it would be permissible to exercise personal jurisdiction over them with respect to this action. Plaintiff has not alleged that any of the California Defendants had any contact with Plaintiff other than to investigate the gang validation question, which is purely a matter of California law.

The Ninth Circuit Court of Appeals has determined that it is CDCR's Office of Correctional Safety ("OCS") that "ultimately determines whether to validate an inmate as a prison-gang affiliate." Castro v. Terhune, 712 F.3d 1304, 1309 (9th Cir. 2013). Plaintiff admits that only CDCR officials Rosenkrans, Lawson, and Williams, all of whom are California prison officials who reside in and conduct their official activities within the State of California, were the "final decision makers in Plaintiff's validation package." Second Amended Complaint, at 27.

Accordingly, the cause of action against Defendants Garrett, Logan, Murphy, Taber, Luna, Bates, Crandall, Perez, Lawson, Rosenkrans, Williams, Cate, "John/Jane Doe # 1," "John Doe # 2," and "John Doe # 3" should be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for lack of personal jurisdiction. See Durham v. Hood, 412 Fed.Appx. 127, 129 (10th Cir. 2011)(unpublished op.)(holding district court did not err in dismissing federal correctional officials from action because director of Bureau of Prisons "did not purposefully avail himself of the protection and benefits of Colorado law simply by virtue of his supervisory role at the BOP" and other federal prison officials'

"contacts with Colorado were completely fortuitous to the extent [plaintiff] alleged they were involved in responding to his grievances, and purely speculative where he simply assumed they had other contacts with the forum state"); see Trujillo, 465 F.3d at 1217 (concluding that 28 U.S.C. § 1915 authorizes the sua sponte dismissal of claims when personal jurisdiction is clearly absent).

V. Personal Participation - Defendant Figueroa

Plaintiff names NFCF Warden Figueroa as a Defendant in this action. However, Plaintiff's only allegation concerning Defendant Figueroa is that this Defendant is liable because he is "legally responsible for the operation" of NFCF and "for the welfare of all the inmates of that prison." Second Amended Complaint, at 11. "A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability. Personal liability 'under § 1983 must be based on personal involvement in the alleged constitutional violation.'" Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011)(quoting Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997)). "Section 1983 does not authorize liability under a theory of respondeat superior." Id. at 1164. "The plaintiff therefore must show an 'affirmative link' between the supervisor and the constitutional violation." Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 767 (10th Cir. 2013)(quoting Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010)). "This requires, for example, more than 'a supervisor's mere knowledge of his subordinate's' conduct." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)). Thus, the plaintiff seeking to state a § 1983 claim against a defendant based on his or her supervisory responsibilities must show "(1)

personal involvement; (2) causation, and (3) state of mind." Id.  Plaintiff has not alleged facts creating any inference of Defendant Figueroa's personal involvement in the alleged deprivation of Plaintiff's due process rights as a result of the validation of his gang status by California CDCR officials.  Moreover, the allegations against Defendant Figueroa do not show an affirmative link between the alleged constitutional deprivation and his personal participation. Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir.2009), Thus, the action against Defendant Figueroa should be dismissed without prejudice pursuant to 28 U.S.C. §§1915A(b) and 1915(e)(2)(B) for failure to state a plausible claim for relief against this Defendant.

VI. Liberty Interest/Due Process

Even assuming that Plaintiff could establish personal jurisdiction over one or more of the Defendants and that there was a liberty interest at stake in his avoiding continued confinement in the administrative segregation unit of NFCF or the SHU of another state prison, Plaintiff has not stated a plausible claim of a denial of due process.  In Wilkinson v. Austin, 545 U.S. 209, 225–229 (2005), the Supreme Court held that "informal, non-adversarial procedures," involving notice of the factual basis for the classification review and an opportunity for rebuttal, and a short statement of reasons, as well as multiple levels of review of the decision, were sufficient safeguards for an inmate's placement in maximum custody.

In instances in which an inmate's liberty interest in avoiding administrative segregation is established, the Supreme Court held that due process requires the inmate

11

receive "some notice" of the charges and "an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Hewitt v. Helms, 459 U.S. 460, 476 (1983). Although in Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court abrogated Hewitt's "methodology for establishing the liberty interest," the Court has stated that the decision in Hewitt "remain[s] instructive for [its] discussion of the appropriate level of procedural safeguards." Wilkinson, 545 U.S. at 229.

Further, without addressing the particular conditions of a California inmate's SHU placment based on a gang validation, the Ninth Circuit Court of Appeals has held that prison gang validation decisions require prison officials to provide an inmate with notice of the charges against him and an opportunity to present his views, and are reviewed under the "some evidence" standard established in Superintendent v. Hill, 472 U.S. 445, 455 (1985). Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003). See Castro, 712 F.3d at 1314 (holding "[d]ue process guarantees [plaintiff inmate] that the evidence used to validate him [as a gang affiliate] meet the 'some evidence' evidentiary standard"). "When . . . a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication - and federal courts will review the application of those constitutionally required procedures." Swarthout v. Cooke, __ U.S. __, 131 S.Ct. 859, 862 (2011).

Plaintiff's own evidentiary documents submitted with his pleadings, including the documents provided him at the time of the validation decision, his administrative appeal documents, and the rulings issued by CDCR officials in his administrative appeal, show that he received all of the process he was due with respect to the validation determination.

The evidentiary documents provided by Plaintiff demonstrate Plaintiff received advance notice of the CDCR investigation of his gang status and the informational documents upon which the gang validation decision was being considered, the opportunity to present a written statement to rebut the informational documents, a copy of the decision itself, and a statement of the reasons for the validation decision. California law, Cal.Code Regs. tit. 15, § 3378(c)(4), required "three (3) independent source items of documentation indicative of association with validated gang members or associates," and the Amended Report issued by CDCR officials provided Plaintiff with the evidentiary basis for the decision by stating that three "items" described on the form "meet the validation requirements" and that based on the evidence presented in those three "items" Plaintiff was validated as an associate of the Northern Structure prison gang. Plaintiff was provided multiple levels of administrative appeals of the validation decision, and the decision was modified to reflect that one of the factual bases for the validation decision was determined to be inadequate.

Moreover, although Plaintiff complains that the evidence supporting the decision was falsified, his allegations are speculative and conclusory. Under Hill, courts do not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, "the relevant question is whether there is any evidence in the record that could support the conclusion." Hill, 472 U.S. at 455-56. The record before the Court as presented by Plaintiff with his initial pleadings shows Plaintiff was provided adequate procedural safeguards in the gang validation decision, including findings of reliability of confidential information, and

13

the validation determination was supported by some evidence in the record.

RECOMMENDATION

Based on the foregoing findings, it is recommended that Plaintiff's cause of action be DISMISSED without prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. It is further recommended that the dismissal of this cause of action count as one "prior occasion" or "strike" pursuant to 28 U.S.C. § 1915(g). See Hafed v. Fed. Bureau of Prisons, 635 F.3d 1172, 1176, 1177 (10th Cir. 2011)("When an action or appeal is dismissed as frivolous, malicious, or for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B), the dismissal counts as a strike" and "a dismissal under [28 U.S.C. ] § 1915A counts as a strike when the action was dismissed as frivolous, malicious, or for failure to state a claim . . . ."). Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by _____September 16th_____, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this __26th__ day of __August__, 2013.

                                        GARY M. PURCELL
                                        UNITED STATES MAGISTRATE JUDGE